UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

------------------------------------------------------------ X

SHATEEK BILAL,

                Petitioner,

   - against -

HAROLD D. GRAHAM, Superintendent of
Auburn Correctional Facility,

                Respondent.

------------------------------------------------------------ X

**USDC SDNY**
**DOCUMENT**
**ELECTRONICALLY FILED**
DOC #:
DATE FILED: 10/22/15

**OPINION AND ORDER**

**11-cv-04195 (SAS)**

**SHIRA A. SCHEINDLIN, U.S.D.J.:**

# I.  INTRODUCTION

       Petitioner Shateek Bilal brings this pro se habeas corpus petition pursuant to section 2254 of Title 28 of the United States Code challenging his state court conviction following a jury trial in New York County Court, Westchester County.[1]  After being convicted of two counts each of the Criminal Sale of a Controlled Substance in or Near School Grounds,[2] the Criminal Sale of a Controlled Substance in the Third Degree,[3] the Criminal Possession of a Controlled

---

[1]      *See* Petition for a Writ of Habeas Corpus ("Pet."); Memorandum of Law in Opposition to the Petition for Writ of Habeas Corpus ("Opp. Mem.").

[2]      *See* New York Penal Law § 220.44.

[3]      *See id.* § 220.39.

Substance in the Third Degree,[4] and the Criminal Possession of a Controlled Substance in the Seventh Degree,[5] Bilal was sentenced to eight years of imprisonment to be followed by three years of supervision.[6]

Bilal's Petition challenges his conviction on the following grounds: (1) the jury's verdict was against the weight of the evidence and/or not supported by sufficient evidence; (2) the trial court improperly permitted opinion hearsay evidence; (3) the trial court improperly precluded demonstrative evidence in the form of Bilal's tattoos, gold teeth, and a distinctive burn mark; (4) the prosecutor's remarks on summation denied him a fair trial; (5) the trial court improperly refused to conduct a retrospective competency hearing; (6) the People's failure to disclose certain discovery materials violated *People v. Rosario*;[7] (7) his trial counsel was ineffective for failure to move to suppress physical evidence (cocaine) on Fourth Amendment Grounds, failure to introduce photographs taken by a private

---

[4]     *See id.* § 220.16.

[5]     *See id.* § 220.03.

[6]     Specifically, Bilal was sentenced to concurrent terms of eight years of imprisonment to be followed by three years of supervision on all counts except for the two counts of Criminal Possession of a Controlled Substance in the Seventh Degree, for which he received concurrent one-year terms, with all terms to run concurrently.  *See* 8/5/09 Decision and Order of the Honorable Susan M. Capeci, County Court Judge, Ex. T to Opp. Mem., at 3.

[7]     9 N.Y.2d 286 (1961).

investigator, failure to discredit the testimony of Officer Osorio, and failure to object to the prosecutor's comments during summation; (8) the trial court's rulings violated the Confrontation Clause; (9) he did not receive a fair trial because he was incompetent to stand trial; (10) he did not receive a fair trial because material evidence testimony was false and known to the prosecution to be false prior to the entry of the judgment; and (11) he was prejudiced as a result of an amendment of the bill of particulars during trial.[8]

## II.   BACKGROUND

### A.   The Offending Conduct

From April 2005 to the end of October 2005, the Yonkers Police Narcotics Unit, under the supervision of Detective Sergeant Kevin Tighe, participated in Operation Impact, a multi-agency effort targeting high-crime areas, including Nodine Hill, a neighborhood beset by drug-related crimes.[9]  Three undercover officers, including Angela Osorio, were part of the team, and nine

---

[8]    In addition, on April 9, 2012, the petition was deemed amended to include the grounds raised in motions made by Bilal pursuant to sections 440.10 and 330.30 of New York's Criminal Procedure Law ("CPL").  Many of these grounds are duplicative of those listed above, but include additional ineffective assistance of counsel claims.

[9]    *See* 11/22/11 Affidavit in Opposition to Petition for Writ of Habeas Corpus of John Carmody, Assistant District Attorney, County of Westchester ("Carmody Aff."), at 1-2.

officers were assigned as backup.[10]  Officer Osorio participated in roughly eighty

narcotics transactions during the six-month operation, making two to three

undercover buys each day.[11]

On July 12, 2005, at approximately 3:20 p.m., while in the vicinity of

169 Oak Street in Nodine Hill, Bilal and Officer Osorio had a conversation during

which Bilal offered to sell her crack cocaine.[12]  This conversation was observed by

a member of the backup team.  "Officer Osorio was also in possession of a Kell

transmitter which allowed the nine officers assigned as backup to hear her while

she was out in the field."[13]  Officer Osorio then followed Bilal into an alley where

he sold her a bag of crack cocaine for ten dollars.[14]  "As she proceeded to a

prearranged meeting location, Officer Osorio continually repeated the description

of petitioner for the benefit of a backup team: black male, bald head, white tank

top, about 5'9'' tall, in his mid-thirties."[15]  Minutes after the sale, in the same area

where it had taken place, backup officer Detective Brian Menton took a digital

---

[10]     *See id.* at 2 & n.3.

[11]     *See id*. at 2.

[12]     *See id.*

[13]     *Id.* at 2 n.3.

[14]     *See id.*

[15]     *Id.*

picture of Bilal.[16]  Later that day, Officer Osorio viewed the digital picture and

identified Bilal as the person from whom she had purchased crack cocaine.[17]

The next day, July 13, 2005, at approximately 4:25 p.m., near 160

Willow Street in Nodine Hill, Bilal again sold Officer Osorio a bag of crack

cocaine.[18]  After the sale, Bilal told the officer to call him "Slim," handed her a

piece of paper on which the name Slim and a telephone number were written, and

told her to call him if she needed anything.[19]  "Officer Osorio then proceeded to the

pre-arranged meeting location with her back-up team, again repeating out loud the

description of petitioner through the Kell transmitter she was carrying — same

male from yesterday, bald head, blue t-shirt."[20]  Detective Sargeant Tighe, who was

positioned as a backup officer, then spotted Bilal walking southbound on Willow.[21]

Later that same day, at approximately 10:00 p.m., two uniformed

officers, who were also part of the backup team, arrested Bilal on an outstanding

---

[16]     *See id.*  I will refer to the digital picture of Bilal that is attached as
Exhibit BB to the Opposition Memorandum as the "Disputed Photograph."

[17]     *See* Carmody Aff. at 2.

[18]     *See id.* at 3.

[19]     *See id.*

[20]     *Id.*

[21]     *See id.*

warrant out of Bronx County for a probation violation.[22]  Upon arrival at the

precinct, police checked the backseat of the patrol car and recovered thirteen twists

of crack cocaine from the location where Bilal was seated, which resulted in a

separately filed criminal action in the Yonkers City Court.  "This case was

adjourned several times for various reasons (including primarily the filing of [the]

Westchester County Indictment []), until October 31, 2006, when it was dismissed

following the County Court's finding that defendant was incompetent."[23]  At

Bilal's request, the details surrounding his arrest were not elicited at trial, so as to

preclude mention of this other crime.[24]

### B.    Procedural History

#### 1.    State Court Proceedings

Bilal was arraigned on December 8, 2005.  Pre-trial Bilal moved to

preclude identification testimony.[25]  The trial court denied the motion with respect

to the in-person identification of Bilal made by Officer Osorio during the first drug

sale and with respect to Officer Osorio's identification of Bilal from the

---

[22]    *See id.*

[23]    *Id.* at 4.

[24]    *See id.*

[25]    *See id.*

photograph on that same day, holding that these identifications were confirmatory in nature.[26]  A hearing on whether the identification of Bilal from a photograph during the grand jury proceeding was confirmatory in nature was held on June 26, 2006, after which the court denied the motion to suppress.[27]

The trial began with jury selection on June 27, 2006, and continued to July 12, 2006, when the jury returned its verdict.[28]  At trial, Officer Osorio identified Bilal as the man who sold her crack cocaine on July 12 and 13, 2005.[29] Officer Osorio also identified Bilal as the seller by pointing him out in the Disputed Photograph taken by backup officer Detective Menton on July 12, 2005.[30] Additional proof at trial consisted of the testimony of backup officers who corroborated Officer Osorio's identification of Bilal as the seller by placing him in the area of the drug sales on both days; the officers who brought the drugs to the laboratory for analysis; and the forensic chemist who determined that the two substances sold by Bilal contained cocaine.[31]

---

[26]     *See id.* 4-5.

[27]     *See id.* at 6.

[28]     *See id.* at 7.

[29]     *See id.*

[30]     *See id.*; *see also* Disputed Photograph.

[31]     *See* Carmody Aff. at 7.

-7-

Bilal advanced a misidentification defense.  Bilal's younger sister, the only witness called by the defense, testified that Bilal had a tattoo of a girl's name on one arm, that he had a burn mark on his other arm, and that he had six gold teeth, which he had had for sixteen years.  Bilal's counsel used this testimony to challenge the credibility and reliability of Officer Osorio's identification of Bilal as the seller, as Officer Osorio had not included any of these characteristics in her descriptions of Bilal.[32]

Following his conviction, he was scheduled to be sentenced on September 7, 2006.  However, in late August Bilal filed a peculiar pro se motion in which he claimed, among other things, to be the King of Uganda, and sought to be put to death for murder.[33]  After a psychiatric examination pursuant to CPL section 730, Bilal was found to be incompetent and was committed to the Mid-Hudson Forensic Psychiatric Center on October 26, 2006.[34]

Less than a month later, on November 17, 2006, Bilal was declared competent by his treating doctors, who found that Bilal suffered no "[i]mpairment of understanding of the trial process and roles of participants" and no

---

[32]   *See id.* at 8.

[33]   *See* Bilal pro se motion, Ex. I to Opp. Mem.

[34]   *See* 10/26/06 Order of Commitment, Ex. D to Opp. Mem.

"[i]mpairment of [his] ability to establish [a] working relationship with an attorney."[35]  On December 29, 2006, Bilal filed another odd motion, seeking "tubal litigation."[36]  Another competency hearing was held, at the conclusion of which the trial court ordered another section 730 examination.  Bilal was again found to be incompetent, and on March 27, 2007, the trial court ordered that he remain in state custody pending further observation and treatment.[37]  On April 27, 2007, Bilal's treating doctors found him to be competent and he was returned to the trial court for further proceedings.[38]  On May 29, 2007, the trial court confirmed that determination of fitness without objection from Bilal.[39]

On June 18, 2007, Bilal, represented by counsel, filed a motion pursuant to CPL section 330.30 seeking to set aside the jury verdict on several grounds, including that Bilal was incompetent to stand trial; that the police testimony at trial was false and that the prosecutor knew that it was; and that trial counsel was ineffective for failing to investigate alibi witnesses and for not

---

[35]     11/17/06 Notification of Fitness to Proceed, Ex. E to Opp. Mem.

[36]     Carmody Aff. at 10.

[37]     *See id.*

[38]     *See generally* 4/27/07 Notification of Fitness to Proceed, Ex. G to Opp. Mem.

[39]     *See* Carmody Aff. at 10.

sufficiently impeaching the testimony of Detective Menton at trial.[40]  The State

opposed the motion on the ground that the issues raised were outside the record,

and thus not cognizable under section 330.30(1) as a matter of law.[41]  With respect

to Bilal's claim of incompetence during his trial, the State also argued that Bilal's

claim lacked merit from the standpoint of the observations of the trial prosecutor.

The trial prosecutor noted that during pre-trial hearings and jury selection, Bilal

appeared to consult with his trial counsel for the purpose of responding to factual

assertions about his prior record and selecting a qualified jury; and, during the trial

itself, the prosecutor observed that Bilal exhibited a rational demeanor and

appearance at all times.[42]  The State further argued that Bilal's experienced trial

counsel never sought a CPL section 730 examination before or during trial or

otherwise noted on the record that petitioner might have a problem understanding

the proceedings, and that Bilal's pro se motions for discovery and to represent

himself reflected his competence shortly before the trial began.  Finally, the State

argued that the subsequent findings of Bilal's incompetence pending sentencing,

but after trial, did not detract from, nor were they inconsistent with, a finding that

---

[40]     *See id.*

[41]     *See id.* at 11.

[42]     *See id.*

he was competent at an earlier time in the proceedings.[43]  The trial court adopted

the "People's arguments in their entirety" and denied petitioner's motion.[44]

Defendant was sentenced on August 20, 2007.  Before his direct

appeal was perfected, Bilal moved pursuant to CPL section 440.10 to vacate his

judgment of conviction on the exact grounds raised in his previous CPL section

330.30 motion.[45]  The trial court denied the motion because it raised the "exact

issues" which were previously determined on the merits, was procedurally barred

under CPL section 440.10, and the claims lacked merit.[46]

Bilal's direct appeal was perfected in March 2009.[47]  He asserted that

(1) the jury's verdict was against the weight of the evidence and not supported by

sufficient evidence; (2) the introduction of "improper opinion (hearsay) evidence"

required reversal; (3) the trial court improperly precluded demonstrative evidence;

---

[43]     *See id.*

[44]     *See* 8/3/07 Decision and Order of the Honorable Rory J. Bellantoni,
County Court Judge ("August 2007 Decision"), Ex. J to Opp. Mem., at 4.

[45]     *See* Carmody Aff. at 14.

[46]     *See* 2/24/09 Decision and Order of the Honorable Rory J. Bellantoni,
County Court Judge, Ex. N to Opp. Mem., at 2, 3.  Bilal's request for leave to
appeal this ruling to the Appellate Division, Second Department was denied by the
Appellate Division on May 11, 2009.

[47]     *See* Carmody Aff. at 18 (citing 2/26/09 Brief for Appellant by John
Brian Mcreery, appellate counsel for Bilal, Ex. U to Opp. Mem.).

-11-

(4) "the prosecutor's summation required reversal, in the interest of justice;" and

(5) the trial court improperly denied defendant a "retrospective competency

hearing."[48]   Bilal also submitted a supplemental pro se brief in which he raised the

following claims:  (1) that he was prejudiced by the trial court's decision allowing

the People to amend the bill of particulars to correct an error concerning the site of

the first drug sale; (2) that the People failed to disclose a record of money used by

Officer Osorio to purchase narcotics from him, and that this record constituted

*Rosario* material; (3) that the People failed to disclose when the police first learned

of petitioner's outstanding Bronx County arrest warrant; (4) that the People failed

to provide him with the memory card from the digital camera used in this case; and

(5) that his attorney was ineffective for failing to move to suppress physical

evidence in the form of cocaine on Fourth Amendment grounds, failing to

introduce into evidence photographs of Bilal taken by a private investigator and

various police reports, and failing to object to certain comments made by the

prosecutor during summation (the same remarks objected to in counsel's appellate

brief); (6) that the prosecutor suborned perjury; (7) that he was not competent at

the time of trial and that the trial court erred in not conducting a hearing to

retroactively determine his competency at that earlier time (also raised in counsel's

---

[48]     *See id.*

appellate brief); (8) that the  counts of Criminal Possession of a Controlled Substance in the Third Degree should be dismissed; and (9) that his right to confrontation was violated by the trial court's *in limine* ruling precluding Bilal from eliciting from Officer Osorio the precise location on her body where the Kell transmitter was positioned.[49]  In addition, Bilal claimed that the counts of Criminal Possession of a Controlled Substance in the Seventh Degree must be dismissed, as included in the two counts of Criminal Possession of a Controlled Substance in the Third Degree pursuant to CPL section 300.40(3)(B), a point the State later conceded.[50]

On December 14, 2010, the Appellate Division, Second Department, modified the judgment of conviction by vacating Bilal's convictions of Criminal Possession of a Controlled Substance in the Seventh Degree, vacating the sentences imposed on them, and dismissing those counts of the indictment.  As so modified, the judgment was otherwise affirmed.[51]  On April 7, 2011, the New York Court of Appeals denied leave to Appeal.[52]  On August 25, 2011, the New York

---

[49]     *See* 1/18/10 Supplemental Brief for Defendant-Appellant ("Bilal Supp."), Ex. W to Opp. Mem.

[50]     *See* Carmody Aff. at 18-20.

[51]     *See generally People v. Bilal*, 79 A.D.3d 900 (2d Dep't 2010).

[52]     *See People v. Bilal*, 16 N.Y.3d 856 (2011).

Court of Appeals denied reconsideration.[53]

### 2.    Habeas Proceedings

On May 25, 2011, Bilal filed the instant Petition, raising the eleven grounds described above.  On December 1, 2011, he sought an extension of time to respond to the Opposition Memorandum, stressing that he sought "to obtain other documents and photos that adequately would disprove those submitted by the People;" Magistrate Judge Lisa Margaret Smith extended Bilal's time to reply to February 29, 2012.[54]  Bilal timely filed a reply.[55]

On April 9, 2012, Judge Smith held a conference at which she deemed the Petition amended to include the claims set forth in Bilal's section 440.10 and 330.30 motions, and set a briefing scheduling in light of the amendment.  On April 25, 2012, respondent filed a letter in response to the Amended Petition.[56]  On May 23, 2012, Bilal requested and received an extension of time to file a reply, indicating that he was "awaiting affidavits [and] photographs taken by a private

---

[53]     *See People v. Bilal*, 17 N.Y.3d 813 (2011).

[54]     Docket No. 23.

[55]     *See* Response to Opposition to Writ of Habeas Corpus ("Bilal Response").

[56]     *See* 4/25/12 Letter from Carmody to Judge Smith.

investigator that will prove some of my claims[,] to wit: Perjury."[57]  In November

2012, Bilal filed his reply ("Bilal Reply"), attaching an affidavit from a private

investigator, additional photographs, and several medical reports.

## III.   LEGAL STANDARDS

### A.     Deferential Standard for Federal Habeas Review

This petition is governed by the Antiterrorism and Effective Death

Penalty Act of 1996 (the "AEDPA").  The AEDPA provides that a federal court

may not grant a writ of habeas corpus to a prisoner in custody pursuant to the

judgment of a state court with respect to any claim, unless the state court's

adjudication on the merits of the claim: "(1) was contrary to, or involved an

unreasonable application of, clearly established Federal law, as determined by the

Supreme Court of the United States;"[58] or (2) "was based on an unreasonable

determination of the facts in light of the evidence presented in the State court

proceeding."[59]

A state-court decision is contrary to clearly established federal law, as

determined by the Supreme Court, in the following two instances:

---

[57]      Docket No. 36.

[58]      28 U.S.C. § 2254(d)(1).

[59]      *Id.* § 2254(d)(2).

-15-

First, a state-court decision is contrary to this Court's precedent if the state court arrives at a conclusion opposite to that reached by this Court on a question of law.  Second, a state-court decision is also contrary to this Court's precedent if the state court confronts facts that are materially indistinguishable from a relevant Supreme Court precedent and arrives at a result opposite to ours.[60]

With regard to the "unreasonable application" prong, the Supreme Court has stated:

[A] state-court decision can involve an "unreasonable application" of this Court's clearly established precedent in two ways.  First, a state-court decision involves an unreasonable application of this Court's precedent if the state court identifies the correct governing legal rule from this Court's cases but unreasonably applies it to the facts of the particular state prisoner's case.  Second, a state-court decision also involves an unreasonable application of this Court's precedent if the state court either unreasonably extends a legal principle from our precedent to a new context where it should not apply or unreasonably refuses to extend that principle to a new context where it should apply.[61]

In order for a federal court to find a state court's application of Supreme Court precedent to be unreasonable, the state court's decision must have been more than incorrect or erroneous.  Rather, "[t]he state court's application of clearly established law must be *objectively unreasonable*."[62]  This standard "'falls

---

[60]     *Williams v. Taylor*, 529 U.S. 362, 405 (2000).

[61]     *Id.* at 407.

[62]     *Lockyer v. Andrade*, 538 U.S. 63, 75 (2003) (emphasis added). *Accord Renico v. Lett*, 559 U.S. 766, 773 (2010) (stating that "[t]his distinction creates 'a substantially higher threshold' for obtaining relief than *de novo* review")

somewhere between merely erroneous and unreasonable to all reasonable jurists.'"[63]  While the test requires "'[s]ome increment of incorrectness beyond error, . . . the increment need not be great; otherwise habeas relief would be limited to state court decisions so far off the mark as to suggest judicial incompetence.'"[64]  Furthermore, section 2254(d) applies to a defendant's habeas petition even where the state court order does not include an explanation of its reasoning.[65]

> Where a state court's decision is unaccompanied by an explanation, the habeas petitioner's burden still must be met by showing there was no reasonable basis for the state court to deny relief.  This is so whether or not the state court reveals which of the elements in a multipart claim it found insufficient, for [section] 2254(d) applies when a "claim," not a component of one, has been adjudicated.[66]

---

(quoting *Schriro v. Landrigan*, 550 U.S. 465, 473 (2007)); *Williams*, 529 U.S. at 409; *Harris v. Kuhlman*, 346 F.3d 330, 344 (2d Cir. 2003).

[63]     *Overton v. Newton*, 295 F.3d 270, 276 (2d Cir. 2002) (quoting *Jones v. Stinson*, 229 F.3d 112, 119 (2d Cir. 2000)).

[64]     *Francis v. Stone*, 221 F.3d 100, 111 (2d Cir. 2000) (quoting *Matteo v. Superintendent, SCI Albion*, 171 F.3d 877, 889 (3d Cir. 1999)).

[65]     *See Harrington v. Richter*, 562 U.S. 86, 98 (2011).

[66]     *Id.* (citing, *inter alia*, *Sellan v. Kuhlman*, 261 F.3d 303, 311–12 (2d Cir. 2001) ("[W]hen a state court fails to articulate the rationale underlying its rejection of a petitioner's claim, and when that rejection is on the merits, the federal court will focus its review on whether the state court's ultimate decision was an unreasonable application of clearly established Supreme Court precedent." (quotation marks and citation omitted))).

Section 2254(d) also applies where a state court does not explicitly state in its opinion that it is adjudicating a claim on the merits.[67]  "When a federal claim has been presented to a state court and the state court has denied relief, it may be presumed that the state court adjudicated the claim on the merits in the absence of any indication or state-law procedural principles to the contrary."[68]

The deferential standard of review created by the AEDPA also extends to state-court factual determinations.  Such determinations are presumed to be correct, and the petitioner must rebut them by clear and convincing evidence.[69]

## B.    Exhaustion Requirement

Section 2254 provides that a habeas petition by a state prisoner may not be granted unless "the applicant has exhausted the remedies available in the courts of the State."[70]  In order to satisfy this exhaustion requirement, a prisoner must have "'fairly presented to an appropriate state court the same federal constitutional claim that he now urges upon the federal courts,'"[71] either in the

---

[67]    *See id.*

[68]    *Id.* at 99.

[69]    *See* 28 U.S.C. § 2254(e)(1).

[70]    *Id.* § 2254(b)(1)(A).

[71]    *Turner v. Artuz*, 262 F.3d 118, 123 (2d Cir. 2001) (quoting *Klein v. Harris*, 667 F.2d 274, 282 (2d Cir. 1981)).

form of "explicit constitutional arguments" or simply by "alleging facts that fall

'well within the mainstream of constitutional litigation.'"[72]  Fair presentation of a

claim, for exhaustion purposes, includes petitioning for discretionary review in the

state's highest appellate court.[73]  However, "a federal habeas court need not require

that a claim be presented to a state court if it is clear that the state court would hold

the claim procedurally barred."[74]  In such cases, a district court may deem the

claims to be exhausted.[75]

When a habeas petition under the AEDPA contains both exhausted

and unexhausted claims, a district court "can offer the petitioner 'the choice of

returning to state court to exhaust his claims or of amending or resubmitting the

habeas petition to present only exhausted claims.'"[76]  A district court may also

---

[72]     *Levine v. Commissioner of Corr. Servs.*, 44 F.3d 121, 124 (2d Cir. 1995) (quoting *Dave v. Attorney Gen.*, 969 F.2d 186, 192 (2d Cir. 1982) (en banc)).

[73]     *See O'Sullivan v. Boerckel*, 526 U.S. 838, 847-48 (1999); *see also Galdamez v. Keane*, 394 F.3d 68, 74 (2d Cir. 2005) (stating that in New York, exhaustion requires that a "criminal defendant . . . first appeal his or her conviction to the Appellate Division, and then . . . seek further review of that conviction by applying to the Court of Appeals for a certificate granting leave to appeal").

[74]     *Reyes v. Keane*, 118 F.3d 136, 139 (2d Cir. 1997).

[75]     *See id.*

[76]     *McKethan v. Mantello*, 292 F.3d 119, 122 (2d Cir. 2002) (quoting *Rose v. Lundy*, 455 U.S. 509, 510 (1982)).

deny a petition on the merits, even if it contains unexhausted claims.[77]  The Supreme Court has noted that "plainly meritless" claims should be denied on the merits rather than dismissed for failure to exhaust.[78]  Finally, in limited circumstances, a district court may stay a mixed petition and hold it in abeyance until it has been properly presented to the state courts.[79]

### C.    Procedural Bar

Under the adequate and independent state ground doctrine, if the last state court to render judgment clearly and expressly states that its judgment rests on a state procedural bar, federal habeas review is precluded.[80]  Even if the state court alternatively rules on the merits of the federal claim, federal habeas review is precluded if an adequate and independent state ground would bar the claim in state court.[81]  Federal habeas review of procedurally barred claims is foreclosed unless

---

[77]    *See* 28 U.S.C. § 2254(b)(2).

[78]    *Rhines v. Weber*, 544 U.S. 269, 277 (2005) (noting that in light of the discretion to deny unexhausted claims on the merits, the decision to stay a habeas petition to allow a petitioner to exhaust plainly meritless claims would be an abuse of discretion).

[79]    *See id.* at 277-78.

[80]    *See Jones v. Duncan*, 162 F. Supp. 2d 204, 210 (S.D.N.Y. 2001) (citing *Jones v. Vacco*, 126 F.3d 408, 415 (2d Cir. 1997)).

[81]    *See, e.g.*, *Harris v. Reed*, 489 U.S. 255, 264 n.10 (1989); *Garcia v. Lewis*, 188 F.3d 71, 72-82 (2d Cir. 1999); *Glenn v. Bartlett*, 98 F.3d 721, 724-25 (2d Cir. 1996).

the prisoner can demonstrate either (1) "'cause for the default and actual prejudice;'" or (2) "'that failure to consider the claims will result in a fundamental miscarriage of justice.'"[82] To show cause for a default, a prisoner must put forth some objective factor, external to the defense, explaining why the claim was not previously raised.[83] The Supreme Court has provided little guidance as to what constitutes "prejudice," but it can be inferred that prejudice is shown when the claim, if proven, would bear on the petitioner's guilt or punishment.[84] The fundamental miscarriage of justice exception to the procedural bar rule is available only upon a showing of actual innocence.[85] Finally, a habeas petitioner may not avoid the exhaustion requirement by waiting until federal habeas review to bring claims properly raised in state court. If such claims would be procedurally barred

---

[82]   *Glenn*, 98 F.3d at 724 (quoting *Coleman v. Thompson*, 501 U.S. 722, 750 (1991)). *Accord Ylst v. Nunnemaker*, 501 U.S. 797, 801 (1991); *Epps v. Commissioner of Corr. Servs.*, 13 F.3d 615, 617-18 (2d Cir. 1994).

[83]   *See Restrepo v. Kelly*, 178 F.3d 634, 638 (2d Cir. 1999).

[84]   *See Banks v. Dretke*, 540 U.S. 668, 671 (2004) (stating that "prejudice within the compass of the 'cause and prejudice' requirement exists when suppressed evidence is 'material' for *Brady* purposes" (quoting *Strickler v. Greene*, 527 U.S. 263, 281-82 (1999))).

[85]   *See Murray v. Carrier*, 477 U.S. 478, 496 (1986) ("[W]e think that in an extraordinary case, where a constitutional violation has probably resulted in the conviction of one who is actually innocent, a federal habeas court may grant the writ even in the absence of a showing of cause for the procedural default.").

on the state level, they are deemed exhausted and procedurally defaulted for the purposes of federal habeas review.[86]

### D. Ineffective Assistance of Counsel

To establish a claim of ineffective assistance of counsel, a petitioner must show that: (1) his attorney's performance fell below "an objective standard of reasonableness" under "prevailing professional norms" and (2) that he suffered prejudice as a result of that representation.[87]  Both elements must be proven by the petitioner to assert a valid claim.  When considering the first factor, a court must apply a "strong presumption" that counsel's representation fell within the "wide range" of reasonable professional assistance.[88]  "[S]trategic choices made after thorough investigation of law and facts relevant to plausible options are virtually unchallengeable."[89]

"Even if a defendant shows that particular errors of counsel were

---

[86]     *See Coleman*, 501 U.S. at 735 n.1; *see also Woodford v. Ngo*, 548 U.S. 81, 92–93 (2006).

[87]     *Strickland v. Washington*, 466 U.S. 668, 687-88, 693-94 (1984).

[88]     *Id.* at 689.  *Accord Bell v. Cone*, 535 U.S. 685, 697-98 (2002).

[89]     *Strickland*, 466 U.S. at 690.  *Accord Mayo v. Henderson*, 13 F.3d 528, 533 (2d Cir. 1994) ("In assessing the attorney's performance, a reviewing court must judge his conduct on the basis of the facts of the particular case, 'viewed as of the time of counsel's conduct,' and may not use hindsight to second-guess his strategy choices.") (quoting *Strickland*, 466 U.S. at 690).

unreasonable, . . . the defendant must show that they actually had an adverse effect on the defense."[90]  Thus, to establish prejudice

> [t]he [petitioner] must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different.  A reasonable probability is a probability sufficient to undermine confidence in the outcome.[91]

In other words, "[i]t is not enough 'to show that the errors had some conceivable effect on the outcome of the proceeding.'"[92]

Finally, the order of analysis of the two *Strickland* prongs — performance and prejudice — is at the discretion of the court.  As explained by the Supreme Court:

> [T]here is no reason for a court deciding an ineffective assistance claim to approach the inquiry in the same order or even to address both components of the inquiry if the defendant makes an insufficient showing on one.  In particular, a court need not determine whether counsel's performance was deficient before examining the prejudice suffered by the defendant as a result of the alleged deficiencies.  The object of an ineffectiveness claim is not to grade counsel's performance.  If it is easier to dispose of an ineffectiveness claim on the ground of lack of sufficient prejudice, which we expect will often be so, that course should be

---

[90]   *Strickland*, 466 U.S. at 693.

[91]   *Id.* at 694.

[92]   *Harrington v. Richter*, 562 U.S. 86, 104 (2011) (quoting *Strickland*, 466 U.S. at 693).

followed.[93]

Accordingly, if a court finds that there is no prejudice, it need not reach the performance prong.[94]

### E.    State Law and Evidentiary Errors

As a general matter, "[f]ederal habeas relief does not lie for errors of state law."[95]  The United States Supreme Court has "repeatedly held that a state court's interpretation of state law, including one announced on direct appeal of the challenged conviction, binds a federal court sitting in habeas corpus."[96]  "A federal court examining a habeas corpus petition does not have jurisdiction to interpret whether the state courts correctly applied state law."[97]

Similarly, "erroneous evidentiary rulings do not automatically rise to the level of constitutional error sufficient to warrant issuance of a writ of habeas

---

[93]    *Strickland*, 466 U.S. at 697.

[94]    *See Farrington v. Senkowski*, 214 F.3d 237, 242 (2d Cir. 2000) (stating that courts need not resolve the *Strickland* performance prong if the prejudice prong is more readily resolved).

[95]    *Estelle v. McGuire*, 502 U.S. 62, 67-68 (1991).

[96]    *Bradshaw v. Richey*, 546 U.S. 74, 6 (2005).

[97]    *Sutton v. Herbert*, 39 F. Supp. 2d 335, 338 (S.D.N.Y. 1999) (citing *Estelle*, 502 U.S. at 71-72).

-24-

corpus."[98]  A writ of habeas corpus would only issue where an erroneous state evidentiary ruling "deprived [petitioner] of a *fundamentally fair* trial."[99]

## IV.   DISCUSSION

### A.   Procedurally Barred Claims

#### 1.   Sufficiency of the Evidence (Ground 1)

Bilal contends that the jury's verdict is against the weight of the evidence and/or insufficient.  Both claims must be denied.  *First*, unlike a claim based on sufficiency of the evidence, a claim based on the "weight of the evidence" cannot be addressed by a federal habeas court.  This is because "the 'weight of the evidence' argument is a pure state law claim . . . whereas a legal sufficiency claim is based on federal due process principles."[100]

*Second*, Bilal's failure to preserve his legal sufficiency claim for review by the State appellate courts acts as a bar to habeas review.  On direct appeal, the Appellate Division, Second Department held that Bilal's "contention

---

[98]     *Rosario v. Kuhlman*, 839 F.2d 918, 925 (2d Cir. 1988).

[99]     *Taylor v. Curry*, 708 F.2d 886, 891 (2d Cir. 1983) (emphasis in original) (citing *Chambers v. Mississippi*, 410 U.S. 284, 302-03 (1973)).

[100]     *Douglas v. Portuondo*, 232 F. Supp. 2d 106, 116 (S.D.N.Y. 2002). *Accord McKinnon v. Superintendent*, 422 Fed. App'x. 69, 75 (2d Cir. 2011) (explaining that "the argument that a verdict is against the weight of the evidence states a claim under state law, which is not cognizable on habeas corpus") (citing *Estelle*, 502 U.S. at 67-68).

that his convictions were not supported by legally sufficient evidence is unpreserved for appellate review, as defense counsel's motion for dismissal lacked any specificity."[101]  Under well-established New York law, in order to preserve for appellate review a challenge to the legal sufficiency of a conviction, defendant must move for a trial order of dismissal, "and the argument must be 'specifically directed' at the error being urged."[102]  The New York Court of Appeals has "repeatedly made clear . . . general motions simply do not create questions of law for this Court's review."[103]

As such, Bilal's failure to challenge the sufficiency of the evidence in a timely manner is an independent and adequate state procedural ground which prevents federal habeas corpus review unless he can establish cause for his failure to raise the argument and prejudice or that a fundamental miscarriage of justice would result.  Bilal argues that he is "entitled to relief based on the ineffectiveness of counsel" and because "he is actually innocent."[104]  However, Bilal does not argue prejudice, and his cause argument is defective because he never raised and

---

[101]    *Bilal*, 79 A.D.3d at 901.

[102]    *People v. Hawkins*, 11 N.Y.3d 484, 491-92 (2008).

[103]    *Id.*

[104]    Bilal Response at 5.

exhausted his ineffective assistance of counsel claim as a separate claim.[105]

Furthermore, Bilal has not supported his claim of actual innocence with any "new

reliable evidence . . . that was not presented at trial."[106]  The affidavit and

photographs submitted by Bilal with his Reply do not amount to "exculpatory

scientific evidence, trustworthy eyewitness accounts, or critical physical evidence .

. . . ."[107]  Viewing the entire record, this is simply not an extraordinary case

warranting relief.

Bilal's claims regarding the weight and sufficiency of the evidence are

therefore denied.

### 2.    Prosecutor's Remarks (Ground 4)

Bilal contends that certain remarks made by the prosecutor during

---

[105]    *See Murray*, 477 U.S. at 489 (explaining that the exhaustion requirement "generally requires that a claim of ineffective assistance be presented to the state courts as an independent claim before it may be used to establish cause for a procedural default").  Bilal also suggests that the possibility he was incompetent during the trial constitutes cause.  *See* Bilal Reply at 5-6.  However, the record does not support the claim that Bilal was incompetent at trial.

[106]    *Schlup v. Delo*, 513 U.S. 298, 324 (1995).  As explained by the Supreme Court, "the *Schlup* standard is demanding and permits review only in the extraordinary case."  *House v. Bell*, 547 U.S. 518, 538 (2006) (internal quotation marks omitted).

[107]    *Schlup*, 513 U.S. at 324.

summation require reversal of his conviction in the interest of justice.[108]  However, the Appellate Division, Second Department disposed of this claim based on an adequate and independent finding of procedural default, which bars federal habeas review of this claim.  Specifically, the Appellate Division held that Bilal's "challenge to certain remarks made by the prosecutor during her summation is not preserved for appellate review, as no objection was made at the time."[109]

New York's contemporaneous objection rule, "require[s], at the very least, that any matter which a party wishes the appellate court to decide have been

---

[108]     In response to defense counsel's closing remarks — which had challenged Officer Osorio's credibility and implied that she would say anything in order to help the People's case — the prosecutor made the following remarks about which petitioner complains:

> Well again, if they are going to be untruthful, every single person has to be untruthful.  You would have to believe that every single officer, Detective Menton, Officer Osorio, Detective Sergeant Kevin Tighe, Officer Devitt, Detective Dolan, Detective Moynihan, and Detective Mueller, you would have to believe that each one of those people got up and walked over here and put their hands on the Bible and swore, took the oath and the stand, you would have to believe that every single person was untruthful.

Trial Transcript at 914-915.

[109]     *Bilal*, 79 A.D. 3d at 901 (citing CPL § 470.05[2], which provides in part that "[f]or purposes of appeal, a question of law with respect to a ruling or instruction of a criminal court during a trial or proceeding is presented when a protest thereto was registered, by the party claiming error, at the time of such ruling or instruction or at any subsequent time when the court had an opportunity of effectively changing the same").

-28-

brought to the attention of the trial court at a time and in a way that gave the latter the opportunity to remedy the problem and thereby avert reversible error."[110]  The Second Circuit has repeatedly held that New York's contemporaneous objection rule is firmly established and regularly followed such that the failure to abide by it constitutes an adequate and independent state ground.[111]  Accordingly, Bilal's claim regarding the prosecutor's remarks is procedurally barred; and, as discussed above, Bilal has not offered an adequate basis to overcome that procedural bar.

Thus, Bilal's claim relating to the prosecutor's remarks in her closing statement is denied.

### 3.    *Rosario* Violation (Ground 6)

Bilal alleges that the prosecution's failure to disclose a record of the money used by Officer Osorio to purchase the narcotics, information as to when the police first learned of Bilal's outstanding Bronx County warrant, and the

---

[110]    *People v. Luperon*, 85 N.Y.2d 71, 78 (1995).  *Accord People v. Thomas*, 50 N.Y.2d 467, 471 (1980) (explaining that "points which are not raised at trial may not be considered for the first time on appeal" (citing CPL § 470.05[2]).

[111]    *See Whitley v. Ercole*, 642 F.3d 278, 286-87 (2d Cir. 2011) (explaining that Second Circuit "case law has long made clear that New York's contemporaneous objection rule is . . . a 'firmly established and regularly followed' rule" sufficient to constitute an adequate and independent state ground"); *Downs v. Lape*, 657 F.3d 97, 104 (2d Cir. 2011) ("[W]e have held repeatedly that the contemporaneous objection rule is a firmly established and regularly followed New York procedural rule.").

memory card from the digital camera used in his case constitutes a *Rosario* violation.  However, it is well settled that *Rosario* violations are based wholly on New York law and do not present a federal constitutional question subject to federal habeas review.[112]

Bilal's *Rosario* claim is therefore denied.

### B.    The Due Process Claims Lack Merit

#### 1.    Competency to Stand Trial (Grounds 5 and 9 and Amended Petition)

Petitioner maintains that he was mentally incompetent to stand trial, and that the trial court violated his rights by failing to conduct a retrospective competency hearing on the issue of his competence.  Under well-established Supreme Court precedent, "the criminal trial of an incompetent defendant violates due process."[113]  The meaning of competency is also well-established: "a defendant

---

[112]    *See United States ex rel. Butler v. Schubin*, 376 F. Supp. 1241, 1247 (S.D.N.Y. 1974), *aff'd*, 508 F.2d 837 (2d Cir. 1975); *see also Velazquez v. Poole*, 614 F. Supp. 2d 284, 335 (E.D.N.Y. 2007) (stating that an allegation that the prosecution violated *Rosario* "is a state law claim not cognizable on federal habeas review" (citation omitted)).

[113]    *Cooper v. Oklahoma*, 517 U.S. 348, 354 (1996) (explaining that "[c]ompetence to stand trial is rudimentary, for upon it depends the main part of those rights deemed essential to a fair trial, including the right to effective assistance of counsel, the rights to summon, to confront, and to cross-examine witnesses, and the right to testify on one's own behalf or to remain silent without penalty for doing so").

may not be put to trial unless he has sufficient present ability to consult with his lawyer with a reasonable degree of rational understanding and a rational as well as factual understanding of the proceedings against him."[114]  "[T]he right not to stand trial while incompetent is sufficiently important to merit protection even if the defendant has failed to make a timely request for a competency determination."[115] Furthermore, as a matter of procedural due process, "state procedures must be adequate to protect this right."[116]

New York law mandates that the trial court "issue an order of examination when it is of the opinion that the defendant may be an incapacitated person."[117]  The CPL defines an "incapacitated person" as "a defendant who as a result of mental disease or defect lacks capacity to understand the proceedings against him or to assist in his own defense."[118]  According to the Second Circuit, "a hearing must be held when there is reasonable ground for a trial court to conclude

---

[114]    *Ryan v. Gonzales*, 133 S. Ct. 696, 703 (2013) (internal quotation marks and alterations omitted).

[115]    *Cooper*, 517 U.S. at 354 n.4.

[116]    *Pate v. Robinson*, 383 U.S. 375, 378 (1966) (holding that due process had been violated where trial court failed to order a determination of defendant's sanity as required under state statute).

[117]    CPL § 730.30.

[118]    *Id.* § 730.10.

-31-

that the defendant may not be competent to stand trial."[119]

Applying the deferential standard under the AEDPA, the record does not support a finding that it was objectively unreasonable not to order a retroactive competency hearing in this case.  The Appellate Division held that the trial court:

> providently exercised its discretion in denying, without a hearing, the defendant's application, submitted as part of his CPL 330.30 motion, for a reconstruction hearing to determine retrospectively his mental competency during the trial.  A defendant is presumed competent and the court is under no obligation to issue an order of examination unless it has reasonable ground to believe that the defendant was an incapacitated person.  The presumption of competency cannot be rebutted by a mere showing that the defendant has a history of mental illness, nor is a subsequent finding of mental illness evidence of a lack of competency during the subject time period.  Here, there is nothing in the record to indicate that during trial the defendant did not have a sufficient present ability to consult with his lawyer with a reasonable degree of rational understanding or have a rational as well as factual understanding of the proceedings against him.[120]

The record supports this determination.  At no time during the one-year period from his arrest on July 12, 2005 to the return of the verdict on July 13, 2006, did either Bilal or his counsel indicate to the trial court that defendant was not competent to stand trial, and he did not appear incompetent to the prosecution or

---

[119]   *Harris v. Kuhlmann*, 346 F.3d 330, 350 (2d Cir. 2003) (internal quotation marks and alterations omitted).

[120]   *Bilal*, 79 A.D.2d at 901-02 (internal quotation marks, citations, and alterations omitted).

the trial court.  As explained by the trial court:

> In the instant case, Defendant was present through his trial; Defendant did not exhibit any unusual or bizarre behavior that would have suggested to this Court that he was incompetent.  Nor did trial counsel ever make a motion or indicate to the Court that Defendant was unable to assist in his defense due to a lack of mental capacity.  It was not until the jury rendered a guilty verdict that Defendant, in an indirect way, challenged the presumption of sanity; Defendant filed two motions, pro se, one for "immediate death" and another for "tubal litigation."  Trial counsel requested a competency hearing and moved to be relieved.  The Court granted both requests.  After several psychiatric evaluations and two competency hearings, the Court determined on May 29, 2007, that Defendant was competent to be sentenced; Defendant did not contest the final psychiatric findings.  The Court has extensively explored Defendant's contentions regarding his competency and finds [ ] Defendant's assertions and arguments to be without merit.[121]

I therefore cannot conclude that the appellate court's determination

that the trial court was not required to order a competency hearing was either an

unreasonable application of clearly established law or an unreasonable

determination of the facts in light of the evidence.[122]  *First*, as the Second Circuit

---

[121]     August 2007 Decision at 5.  The record also contains compelling evidence that Bilal was competent prior to trial.  For example, Bilal filed a pro se pretrial motion on April 10, 2006.  In that motion he accurately recited the charges against him, indicating that they were "serious crime(s)" for which he "face[d] a substantial prison sentence," stated that he was aware of who and what his attorney had done, and expressed his dissatisfaction with his legal representation, noting that he and his attorney had differing views as to his defense.  Carmody Aff. at 4-5.

[122]     *See Drope v. Missouri*, 420 U.S. 162, 180 (1975) ("The import of our decision in *Pate v. Robinson* is that evidence of a defendant's irrational behavior,

-33-

has pointed out, "since competency involves an inability to assist in the preparation of a defense or rationally to comprehend the nature of the proceedings, failure by trial counsel to indicate the presence of such difficulties provides substantial evidence of the defendant's competence."[123]  *Second*, the Second Circuit has made clear that, "the failure to conduct a full competency hearing is not a ground for reversal when the defendant appeared to be competent during trial, and the [trial] court's view of the defendant's competency based on its observations at trial is entitled to deference."[124]  Finally, the trial court had the benefit of the post-trial psychiatric evaluations in making the determination that a competency hearing was not required.[125]  In short, because "[t]he question of competency focuses on a

_____

his demeanor at trial, and any prior medical opinion on competence to stand trial are all relevant in determining whether further inquiry is required, but that even one of these factors standing alone may, in some circumstances, be sufficient. There are, of course, no fixed or immutable signs which invariably indicate the need for further inquiry to determine fitness to proceed; the question is often a difficult one in which a wide range of manifestations and subtle nuances are implicated.  That they are difficult to evaluate is suggested by the varying opinions trained psychiatrists can entertain on the same facts."); *Harris*, 346 F.3d at 352 ("Considering all of the evidence before the state trial court at the time of the October 17, 1984 hearing, we cannot conclude that it was objectively unreasonable for the court to have denied Harris's motion for a competence hearing.").

[123]     *United States v. Vamos*, 797 F.2d 1146, 1150 (2d Cir. 1986).

[124]     *United States v. Kirsh*, 54 F.3d 1062, 1070 (2d Cir. 1995).

[125]     Likewise, the dismissal of the separately filed criminal action in the Yonkers City Court based on incompetency was *after* the trial and conviction of

-34-

defendant's abilities at the time of trial," and the record indicates that there was little or no basis to conclude that Bilal's abilities were in any way impaired at trial, habeas relief is not warranted on this claim.[126]

### 2.    Evidentiary Rulings (Grounds 2 and 3)

Bilal alleges that the trial court improperly permitted the prosecution's use of hearsay evidence and precluded his attempt to use demonstrative evidence to establish his mistaken identity defense.  As a general matter, a state court's evidentiary rulings, even if erroneous under state law, only present constitutional issues cognizable on habeas review when the ruling deprives petitioner of his due process right to "a *fundamentally fair* trial."[127]

The evidentiary rulings did not deprive Bilal of a fundamentally fair trial.  I will first consider the hearsay challenge.  Bilal argues that the trial court violated New York hearsay rules by permitting the backup officers to testify as to what they learned of the drug transactions through police radio communications, thus improperly bolstering Officer Osorio's testimony.  The Appellate Division held that this challenge was properly preserved but "without merit, as in each

---

Bilal in Westchester County.

[126]    *Kirsh*, 54 F.3d at 1070.

[127]    *Taylor v. Curry*, 708 F.2d 886, 891 (2d Cir. 1983) (emphasis in original).  *Accord Freeman v. Kadien*, 684 F.3d 30, 35 (2d Cir. 2012) (same).

instance, the testimony that, at some point, the witness learned a transaction had been completed, was offered not as proof that there had been a transaction, but to provide necessary background information to the jury."[128]

Bilal's claim fails for several reasons. *First*, while "bolstering" is prohibited under New York law, it is not prohibited by the Federal Rules of Evidence and, as a general matter, the practice of bolstering does not deprive a defendant of a due process right to a fair trial. *Second*, as suggested by the Appellate Division, admission of the evidence was not a hearsay violation. The testimony was not offered for the truth of the matter asserted — *i.e.*, that drug sales had occurred — but for the purpose of establishing the reasons behind the actions of the officers, including the relevance of police observation of Officer Osorio and Bilal both before and after each drug transaction, to help establish the chain of custody for the drugs. Finally, even if the trial court erroneously allowed hearsay evidence, that error did not infuse Bilal's trial with unfairness so as to deny him due process of the law. The evidence at trial was that only Officer Osorio had been a witness to the drug sales and that she had radioed her fellow officers with information regarding the completed sale and Bilal's description, and the trial court's limiting instruction in its final charge to the jury reiterated that the

---

[128]    *Bilal*, 79 A.D. 3d at 901 (internal quotation marks omitted).

statements were not offered for their truth.

I turn next to Bilal's contention that he was deprived of a fair trial by the trial court's refusal to allow him to display for the jury his tattoo, burn mark, and gold teeth.  Bilal claims that this evidence is significant because Officer Osorio had failed to include these characteristics in her contemporaneous descriptions of him, and this failure implicated Officer Osorio's credibility and her ability to identify a suspect.

Under New York law, a court may refuse to allow the admission of demonstrative evidence, such as the displaying of tattoos and other physical features, when there is an insufficient foundation that these features existed at the relevant time.[129]  The trial court denied Bilal's request on the grounds that he was, in effect, asking to give testimonial evidence without subjecting himself to cross-examination and without laying the proper foundation — *i.e.*, independent evidence that the features were present on the date of the crime and that the witness would have had reason to notice them during the incident.[130]  At the same time, the

---

[129]     *See People v. Rodriguez*, 64 N.Y.2d 738, 741 (1984) (holding that "the trial court did not abuse its discretion in refusing to allow defendant to display his tattooed hands in evidence or defense counsel to testify as to the appearance of defendant's hands four days after the theft inasmuch as defendant offered no proof regarding the presence of the tattoos on the date in issue").

[130]     *See* Trial Transcript at 824, 825, 845-847.  The court also noted that if "you have to actually walk [Bilal] in front of the jury and point out these

trial court permitted Bilal's sister, who was subject to cross-examination, to testify about Bilal's tattoos and gold teeth.  The Appellate Division held that Bilal "was not deprived of a fair trial by the Supreme Court's refusal to allow him to display his burns, tattoos, and gold teeth in support of his defense of mistaken identity, since his sister was permitted to testify regarding these features."[131]

Bilal's claim fails for at least two reasons.  *First*, as just described, the trial court had a valid reason for excluding the evidence.  *Second*, there was no prejudice to Bilal as a result of that ruling.  Bilal's sister testified about Bilal's tattoos and gold teeth and Bilal was sitting in plain sight of the jury during the two-week trial.  While Bilal was precluded from offering these characteristics as *demonstrative* evidence, he was clearly not precluded from presenting his mistaken identity defense based on these characteristics.  For all these reasons, the Appellate Division's decision was not an unreasonable application of clearly established law.

### 3.  False Testimony (Ground 10 and Amended Petition)

Bilal claims that he was deprived of a fair trial because the prosecutor obtained a conviction through the knowing use of false testimony given by police witnesses at trial.  Bilal first claims that Detective Menton offered false testimony

---

distinguishing features for the jury, one wonders how distinguishing they are [ ] in the first place."  *Id.* at 824.

[131]   *Bilal*, 79 A.D.3d at 901.

regarding the Disputed Photograph.  According to Bilal, Detective Menton's claim that he took the photograph while Bilal was standing in front of 160 Willow Street is false because the facade of the building in the Disputed Photograph is different from the facade in another photo of 160 Willow Street.  Bilal claims that this discrepancy proves that Detective Menton lied about the location where he had seen Bilal when he photographed him.  Bilal further speculates that since the prosecutor introduced the photograph, she must have known Detective Menton was lying.

Bilal next claims that Officer Osorio lied about having purchased drugs from him on July 12, 2005, because the backup officers did not observe the actual transaction.  Bilal argues that it is not possible for the drug sale to have taken place unnoticed by the two officers on backup.  Lastly, Bilal states that testimony concerning the particulars of his arrest was false.  Specifically, he claims that the officer who arrested him because of the outstanding warrant from Bronx County falsely testified that he was part of the backup team and that he had taken Bilal into custody as a result of Bilal's drug transaction with Officer Osorio. The Appellate Division concluded that these claims were "without merit."[132]

It is clearly established "that a conviction obtained by the knowing

---

[132]    *Id.* at 902.

use of perjured testimony is fundamentally unfair."[133]  To challenge a conviction because of a prosecutor's knowing use of false testimony, a defendant must establish that "(1) there was false testimony, (2) the Government knew or should have known that the testimony was false, and (3) there was any reasonable likelihood that the false testimony could have affected the judgment of the jury."[134]  Bilal's claim fails for the simple reason that he has not established that any of the testimony was false.[135]

   *First*, the photographs used by Bilal to show that the Disputed Photograph was not taken at 160 Willow Street are inconclusive.  But even assuming they were not inconclusive, the fact that the facades are different would only demonstrate that Detective Menton was mistaken about where the photograph was taken.  However, there is no dispute that Bilal is in the Disputed Photograph and that shortly after the photograph was taken Officer Osorio identified Bilal as being the person who sold her drugs earlier that day.  *Second*, Bilal's assertion that the backup officers should have seen the drug transaction is not based on any facts or evidence concerning Operation Impact.  It is purely speculation on Bilal's part.

---

[133] *United States v. Agurs*, 427 U.S. 97, 103 (1976).  *Accord United States v. Cromitie*, 727 F.3d 194, 221 (2d Cir. 2013).

[134] *United States v. Helmsley*, 985 F.2d 1202, 1205-06 (2d Cir. 1993).

[135] *See* Opp. Mem. at 60.

Finally, the reason that the details surrounding his arrest, including the Bronx
County warrant, were not elicited at trial is because those details were excluded
from evidence at Bilal's request.[136]  For all these reasons, the Appellate Division's
decision was not an unreasonable application of clearly established law.

### 4.    Amendment to Bill of Particulars (Ground 11)

Bilal claims that he was prejudiced by the trial court's decision
allowing the prosecutor to amend the bill of particulars to correct an error
concerning the site of the first drug sale.  Following opening statements at trial,
defense counsel brought to the trial court's attention that the People, in their
opening statement, had mentioned 169 Oak Street as the address for the first drug
sale, whereas the bill of particulars listed the address as 169 Elm Street.  Defense
counsel then asked that further mention of Oak Street be precluded.  The
prosecutor responded that the correct address had been provided in discovery.  The
trial court denied defense counsel's application.  The prosecutor later moved to
amend the bill of particulars to reflect the correct address.  Citing lack of prejudice,
the trial court granted the prosecutor's application.[137]

---

[136]    *See* Carmody Aff. at 4.

[137]    *See* Opp. Mem. at 61-63.  Under New York law, a bill of particulars
may generally be amended at any time, provided that "no undue prejudice would
accrue to defendant and that the prosecutor has acted in good faith."  CPL §
200.95.

It is clear from the record that the defense knew the correct address, and knew the address in the bill of particulars was incorrect, prior to trial.  As such, the incorrect address was no more than a clerical mistake and amending the bill of particulars did not result in prejudice.  Accordingly, it cannot be said that Bilal was deprived of a fundamentally fair trial or that the state court's decision was an unreasonable application of clearly established law.

Bilal's due process claims based on incompetency, evidentiary rulings, prosecutorial misconduct, and amendment of the bill of particulars are therefore denied.

### C.   The Confrontation Clause Claim Is Without Merit (Ground 8)

Bilal contends that his Sixth Amendment right of confrontation was violated by the trial court's ruling that he could not elicit the precise position of the Kell transmitter on Officer Osorio's body during the drug transactions.  Bilal's theory, which also implicates due process rights, is that the precise location of the transmitter was important to both impeach Officer Osorio and to support his misidentification defense.  This is because the Kell transmitter apparently did not pick up his voice during the two drug sales.[138]   On direct appeal, the Appellate

---

[138]    *See* Bilal Response at 3; Bilal Supp. at 30.

Division summarily rejected this claim as "without merit."[139]  This decision is entitled to the deference specified in section 2254.[140]

The Confrontation Clause of the Sixth Amendment guarantees the right of an accused in a criminal prosecution "to be confronted with the witnesses against him."  But not every curtailment of the right to cross-examine a witness violates the Confrontation Clause.  As explained by the Supreme Court, the right to confront and cross-examine a witness "may, in appropriate cases, bow to accommodate other legitimate interests in the criminal trial process."[141]  One example of when it may be appropriate to curtail the right is to protect a witness's safety.[142]

---

[139]     *Bilal*, 79 A.D. 3d at 902.

[140]     *See Grayton v. Ercole*, 691 F.3d 165, 174 (2d Cir. 2012) ("Where, as here, a state court's decision is unaccompanied by an explanation, the habeas petitioner's burden still must be met by showing there was no reasonable basis for the state court to deny relief.") (quotation marks omitted); *Wilson v. Mazzuca*, 570 F.3d 490, 499 (2d Cir. 2009) ("Where, as here, a state court fails to articulate the rationale underlying its rejection of a petitioner's claim, and when that rejection is on the merits, the federal court will focus its review on whether the state court's ultimate decision was an unreasonable application of clearly established Supreme Court precedent.") (quotation marks omitted).

[141]     *Rock v. Arkansas*, 483 U.S. 44, 55 (1987) (internal quotation marks omitted).

[142]     *See United States v. Crowley*, 318 F.3d 401, 417 (2d Cir. 2003) (collecting cases).  *Accord United States v. Apazidis*, 523 Fed. App'x 17, 19 (2d Cir. 2013) ("Trial judges retain wide latitude . . . to impose reasonable limits on

Here, the trial court did not preclude all questions concerning the Kell transmitter. The only limitation was that Bilal could not inquire about the exact location of the transmitter on Officer Osorio's body. That narrow limitation does not appear to be arbitrary or disproportionate because it was aimed at protecting the safety of undercover officers who were using Kell devices as part of ongoing undercover work. Nor does preclusion of the testimony suggest that Bilal was deprived of the opportunity to cross-examine Officer Osorio on the fact that his voice was not picked up by the Kell transmitter. Likewise, Bilal could still advance his misidentification defense based on the failure of the People to produce a recording of his voice. For all these reasons, the Appellate Division's decision was not an unreasonable application of clearly established law.

Thus, Bilal's Confrontation Clause claim is denied.

### D. The Ineffective Assistance of Counsel Claims Are Without Merit (Ground 7 and Amended Petition)

On direct appeal, Bilal argued that his trial attorney rendered ineffective assistance counsel on four grounds: (1) failure to move to suppress physical evidence — *i.e.*, the crack cocaine — on Fourth Amendment grounds; (2) failure to introduce photographs taken by a private investigator; (3) failure to use

---

such cross-examination based on concerns about, among other things, harassment, prejudice, confusion of the issues, the witness' safety, or interrogation that is repetitive or only marginally relevant.") (internal quotation marks omitted).

several police reports to discredit the testimony of Officer Osorio; and (4) failure to object to the prosecutor's comments during summation.  The Appellate Division summarily rejected these claims as "without merit."[143]  In addition, Bilal was permitted to add claims raised in his section 440.10 and 330.30 motions.  These include claims of ineffective counsel based on counsel's alleged failure to investigate alibi witnesses and to sufficiently impeach the testimony of Detective Menton at trial.  Bilal is not entitled to relief as he has not shown an unreasonable application of *Strickland v. Washington*.[144]

Bilal's claim based on suppression is wholly without merit as no drugs were recovered from Bilal — the cocaine was recovered from Officer Osorio.  Bilal's first claim concerning the use of alibi witnesses is that counsel should have presented evidence that the other person in the Disputed Photograph had been arrested for criminal possession of a controlled substance.  His second is that there were witnesses who could testify that he was in the Bronx on the dates of the alleged sales.[145]  As explained by Bilal, his counsel determined not to pursue

---

[143]    *Bilal*, 79 A.D. 3d at 902.

[144]    *See Grayton*, 691 F.3d at 174; *Wilson*, 570 F.3d at 499.

[145]    While Bilal has asserted that these individuals saw him in the Bronx on the dates of the drug sales, he has not attempted to substantiate that claim with evidence, such as affidavits.

these so-called alibi witnesses based on her belief that it would look bad for Bilal to have been hanging around with a known drug user/dealer given the charges in the case, and that in her judgment it would be better not to attempt to claim Bilal was in the Bronx during the drug sales.[146]  These are precisely the type of strategic choices that fall within the "wide range" of professional assistance.[147]

For the same reason, Bilal has not shown that counsel's failure to use his "photographic evidence," including for the purpose of impeaching Detective Menton, was ineffective.  As previously noted, the photographs are inconclusive; at most they show that Detective Menton was mistaken about the exact location at which he took the photograph of Bilal shortly after the drug sale on July 12, 2005. Accordingly, not using the photographs to discredit the Disputed Photograph or to impeach Detective Menton is a reasonable strategic choice.  Likewise, Bilal has not stated a claim that counsel was ineffective for not using all available evidence — *i.e.*, their respective police reports — to impeach Officer Osorio and Detective Menton. This is because Bilal has not identified any inconsistencies or exculpatory information in these reports.  Accordingly, Bilal has not shown that his counsel's decision not to use the reports was objectively unreasonable under prevailing

---

[146]     *See* Motion to Set Aside Verdict, Ex. H to Opp. Mem., at Point E.I.

[147]     *Strickland*, 466 U.S. at 689.

professional norms.

There is also no basis to conclude that Bilal received ineffective assistance of counsel based on the remarks made by the prosecutor in her summation. *First*, counsel may have elected not to object to the statements based on her determination that there were no grounds for an objection. *Second*, even if there were something objectionable about the prosecutor's comments, counsel may have had other valid reasons for not objecting, such as not wanting to highlight the very point being made by the prosecutor.

Lastly, Bilal has not shown prejudice. This case involves two sales of crack cocaine on successive days to an undercover officer. Officer Osorio testified that Bilal was the person who sold her the crack cocaine on those consecutive days; there was evidence confirming that the substance she purchased contained cocaine; and Officer Osorio testified that Bilal was in the Disputed Photograph. Based on this overwhelming evidence of guilt, Bilal has failed to demonstrate how any of the purported grounds for a claim of ineffective assistance of counsel caused him prejudice. For all these reasons, the Appellate Division's decision was not an unreasonable application of clearly established law.

Bilal's ineffective assistance of counsel claims are therefore denied.[148]

---

[148]    All of Bilal's contentions and claims not specifically mentioned here are denied on grounds that Bilal has not shown an unreasonable application of

## V.   CONCLUSION

For the foregoing reasons, the Petition is denied.  The remaining issue is whether to grant a certificate of appealability ("COA").  For a COA to issue, a petitioner must make a "substantial showing of the denial of a constitutional right."[149]  A "substantial showing" does not require a petitioner to show that he would prevail on the merits, but merely that reasonable jurists could disagree as to whether "the petition should have been resolved in a different manner or [whether] the issues presented were 'adequate to deserve encouragement to proceed further.'"[150]  Bilal has made no showing.  Thus, I decline to grant a COA.  The Clerk of the Court is directed to close this Petition and this case.

SO ORDERED:

Shira A. Scheindlin
U.S.D.J.

Dated:      New York, New York
            June 22, 2015

_____

clearly established law.

[149]     28 U.S.C. § 2253(c)(2).

[150]     *Slack v. McDaniel*, 529 U.S. 473, 484 (2000) (quoting *Barefoot v. Estelle*, 463 U.S. 880, 893 n.4 (1983) (quotation marks and citation omitted)). *Accord Middleton v. Attorneys Gen. of the States of New York and Pennsylvania*, 396 F.3d 207, 209 (2d Cir. 2005) (denying COA where reasonable jurists could not debate whether the district court's dismissal of the petition was correct).

-48-

**- Appearances -**

**Petitioner (Pro Se):**

Bilal Shateek
3462 Third Avenue
#5I
Bronx, New York 10456


**For Respondent:**

John J. Carmody
Robert K. Sauer
Assistant District Attorneys, Westchester County
County Courthouse
111 Dr. Martin Luther King, Jr. Blvd.
White Plains, New York 10601
(914) 995-4457